Our last case this morning is NG v. Createdhair Designs, 2024-1599. Mr. Kuo. Thank you, your honor. May it please the court. This case is about something a little less high-tech than what we've been discussing today, but it's still nonetheless very important to our client. It really is a straightforward device for attaching a wig or wearing a wig. And as is often the case, a simple apparatus sometimes is hard to describe in words. And what happened here is that through a lot of back and forth with the patent office, the patentee and the patent office were able to come up with claim terms to describe that invention. Now, what the district court did was they were on the right path. They were almost there, and then they said, plain and ordinary meaning. But instead of stopping at plain and ordinary meaning, they said, but plain and ordinary meaning means, and they incorporated an embodiment that's shown, they incorporated a limitation that's shown in the preferred embodiment where the mesh portion is the forward most portion of the apparatus. In particular, what the district court added was the language. I'm sorry. First, they said plain and ordinary. Then they said, i.e., the forward periphery of the mesh element is the most forward portion of the wig grip apparatus. So this creates some inconsistencies. First of all, plain and ordinary should have stopped at plain and ordinary. Secondly, they've added a limitation that is found only in the preferred embodiment. There's no... Well, what do you think the applicant meant by the lack of non-transparency beyond the forward periphery of the transparent? Sure. All that really meant is, and this goes back to, and I'm very happy you asked that question, because when you think about what's the purpose of this invention, the purpose of this invention is to provide an apparatus to allow you to attach a wig to the wearer's head that when the wig is on top of the apparatus, you can't see the apparatus through it. And so what the prior art had shown was you had a band that was visible. It would be visible through the hair part or at the widow's peak. Unfortunately, I think I might need one of these, but that's an aside. And so the prior art that was relied upon, the main one was actually a face mask. And in the face mask, it had a cord around the outside periphery. And so the mesh, because of that cord, would be visible if you incorporated that into a wig apparatus. And so when they were talking about non-transparency past the mesh, they just meant that if you had mesh, you wouldn't have that band forward of that mesh. But the mesh portion is separate, the periphery of the mesh portion is separate apart from the other parts of the wig apparatus, which the district court expressly acknowledges that the overall apparatus has numerous parts of the periphery. And the only part of the claim that requires that there's, when we started talking about the non-transparency issue, that the non-transparency is forward of that mesh portion. But when you say something terminates at a particular forward periphery, does that at least suggest that nothing else extends more forward? No, no. You're suggesting that's not at least a reasonable interpretation? That is what I'm saying. So if you think, and this analogy, again, this is one of those situations hard to describe in words, a pretty simple device. I use the analogy in the briefing of the United States border. And we have there, the southernmost border is how far it extends south. So if you think about extension south, and so if you look at Arizona, for example, that border is still north of the southernmost border of Texas, but it does, the United States does terminate at that border. So the fact that the one portion terminates, and we're talking about just the mesh portion, just because the mesh portion terminates the overall apparatus at the mesh portion, doesn't mean that there can't be other parts that extend. I have a concern with what you're saying, which is that I think to myself, you know, why doesn't the claim language, if that's what was meant, why wasn't what was written in element C, the mesh element terminates at the forward periphery? Instead, it says the wig grip apparatus terminates at the forward periphery. I can't speak to why they did what they did. All I can say is that the wig grip apparatus does terminate where the mesh ends. It also terminates at other portions of periphery that can be forward of the mesh portion. And this claim limitation, do I remember correctly the board said with its construction, it's not saying that the nine mesh portions can't terminate at the same point as the mesh element. It's just saying that the mesh element has to be at the forward most point, right? That's correct, Your Honor. But when you raise that point, there is something from the patent. The patent talks about how that periphery of the mesh portion can be arcuate. And certainly what's shown in the preferred bottom is a outwardly bending arcuate section. And so that's, I think, where they're saying that's the most forward portion. But it doesn't say that the arcuate portion is outwardly bending. It just says arcuate of some sort or angled of some sort. And if I could point you to specifically, this is in APPX 60, column three, and it's the, basically it's the first, it's the last sentence starting, in certain embodiments, the forward periphery 132 and the forward edges 126 may collectively follow a nonlinear forward path. The nonlinear forward path may be arcuate or angled in some fashion. So the arcuate can be in either direction. You know, at the end of the day, what we are doing here is reading in a limitation from the preferred embodiment, which is, this court's precedence has well said, established that unless there is a clear disclaimer or disavowal or some language in the specification that makes that clear, that the patentee is entitled to the full scope of the invention. And here, the district court did not point at any clear language. In fact, the best the district court could say was there's an inference. And the appellee in their briefing, they, at best, they can do is call it, say that it's consistent. And it is consistent. Of course, it's consistent with the preferred embodiment, because the preferred embodiment is covered within the scope of the claim. But you can't limit the patent to that preferred embodiment. Unless you have some other questions regarding the claim construction. Okay. So really briefly on doctrine equivalence and prosecution history estoppel. This really is tied to the claim construction argument, but separate and apart from that is whether or not the doctrine of equivalence kicks in the prosecution history estoppel doctrine. And obviously, we submit that it does not. The amendments that were made related to, you know, whether, as we discussed, whether it be a visible portion past the mesh. And the prior had cords at the edges. The amendments did not speak to positionality, relative positions of the mesh portion and the securement portions. There's nothing about the amendment that relates to the relative positioning of it. So for that reason, it's tangential to it. Yes, it is for patentability, but it's tangential to the question of whether there can be something that's still not visible, but, you know, extends forward of the positionally forward of the mesh. And then lastly, with the doctrine of equivalence, the district court relied on prosecution history estoppel. If we get past that, then there's at least a question of fact regarding whether or not, even if you don't accept our claim construction argument, there's still a question of fact as to whether or not it performs the same function in substantially the same way to have substantially the same result. The only thing that appellees have cited is just a conclusory statement that, no, it's substantially different because it's recessed. At best, there's an open question of fact there. Your Honor, I don't see anything further. We will save you time. Mr. Johnson. May it please the court. Lance Johnson for appellees. Appellant has covered a number of issues, but in this case, he's right. I see it as a simple case where we have an O2 micro controlling decision about whether a claim construction should occur with a textbook Phillips analysis looking at the three sources to discern a meeting of the disputed phrase and a final determination about whether the reason for the amendment rebuts the festo presumption of a prosecution history estoppel. Now, appellee has suggested that plain and ordinary meaning either doesn't require construction or incorporated a preferred embodiment. O2 micro disposes of the first. O2 micro and its progeny made it clear that a court is obligated to construe a term that the otherwise it would leave a jury to deciding the question of what the proper claim construction is, thereby encroaching on the judicial authority. So the court had to describe a meaningful meaning to the disputed phrase, which it did. Before the district court, appellant did not provide a claim construction proposed. As the district court held, it was a context-based discussion of what they thought it would mean. It's not a proposed construction. In a request for reconsideration, they provided a handful of proposed constructions, but those were ruled to be inadmissible as too late. So they've been waived. They have not been appealed in this case. In connection with the issue of incorporation of a preferred embodiment, the court went to great pains to make sure that it was not doing that. Expressly, it said that while we had proposed an alignment language, the court said we can't do that because that's a preferred embodiment. Now, part of the construction problem in this case is because there is no final claims. That was crafted at a final amendment with the examiner, and apparently based only on the two embodiments shown in the figures. And that's permissible. This court has ruled that that is permissible language to do that. However, when it's unclear, the court's got to construe it. And in so doing, the court looked at the prosecution history, the disclosure, the figures, and most importantly, the back and forth between the discussion with the examiner over the reasons for that final amendment and what happened at that final interview. At that final interview, the examiner was very clear when she said that in connection with that, that's the second interview summary, she said that the reason for the amendment, I'm at appendix page 171. It's the examiner's summary of the second interview. In the last four lines, beyond the forward periphery period, both examiner and applicant's representative agreed to change the limitation to state, quote, the rig apparatus terminates at the forward periphery, close quotes, to overcome the 112 rejection and to overcome the prior art of record and put the application in condition for allowance. That's pretty clearly a central reason for the amendment that is not tangential. It means it applies. District Court went through a very detailed analysis of the language used in the interplay about the examiner's suggestion that they should specify the relative position of the mesh as a point of patentability, which in response to that first interview, they didn't do. Then they had the second interview and they arrived at this language, which made it allowable, leading to the conclusion that the examiner finally won and that they specified a position for the mesh. Now, in connection with that language, I think the District Court did a yeoman's job of finding language that would cover both of the disclosed embodiments, yet distinguish from the prior art. As Appellant said, they have, they focus on Walsh in their briefing. That was the anticipating rejection. They mentioned, but don't really discuss the rejection for obviousness based on Becker, Kim and Lee. In that rejection, dig back in the prosecution history, the rejection for obviousness said that Becker had, he was, that was the mesh band that had a little edging to it. And the examiner cited Kim for the proposition that you should have a transparent portion all the way to the edge. That was an obviousness issue. While there were other arguments about obviousness, that was central in the case. Do you have a view on what lacks non-transparency beyond the board periphery means? I can speculate about what it might meant, but the important point is that the examiner thought it was unclear. And they could have appealed that. They could have stood on that language and taken appeal to the board if they determined that the language was both supported and clear. But they didn't. So they gave up that position before the examiner. So I don't, and they agreed to the other language. So I believe that for whatever reason, they waived the argument that that's an applicable limitation. And importantly, the final claim language doesn't refer to just the mesh area being the termination point. It refers to the WIG reparatus. And that's a defined term within the claim, because it has to have two side have to terminate at the forward periphery. We proposed one claim construction, which the district court did not adopt, but it came up with its own. And I believe it was clear and important. In fact, the district court also clarified what it meant by most forward portion. And I'm looking at appendix page 9, top of the first paragraph. The forward ends of the adjacent securement members cannot extend beyond the forward periphery of the mesh element, thus explaining what it meant by most forward portion. I think it's pretty clear from the record. The district court certainly found it was, and I think it's a fair reading of the prosecution history, both that the claim language is what the district court said it is, that it was entered for a purpose related to patentability and forms an estoppel that precludes consideration of the doctrine of equivalence. Unless there are any questions. Thank you, counsel. So thank you, Your Honor. Just a few points. Judge Stoll, you had asked a question about how they could have drafted a claim and counsel spoke to that as well about appealing this, that, or any other. That's not really pertinent here. The claim is what it is and that's what we're addressing. And so on that point, the claim says that the appraise terminates at the forward periphery and the forward periphery is defined as the forward part of the mesh. What the district court also recognized, and I'm looking at APPX-9, the actual claim construction order, he said that as plaintiffs observe, this is in the second paragraph, or first full paragraph, as plaintiff observes, the wig grip apparatus as a whole terminates about its entire periphery. The forward periphery of the mesh element referenced in the disputed claim limitation is one such location. So what we have here is that, yes, the apparatus terminates at the forward periphery of the mesh. That does not exclude the possibility of the overall apparatus terminating at other points. And that's the key point here. So your interpretation of this is just that at the point where the mesh is, it terminates at the part which was already described in the prior limitation as being the forward-most part of that element? Correct. Okay. Correct. The only other thing I want to talk about briefly is... Why doesn't that render that limitation superfluous then? I'm sorry? Why doesn't that render that limitation superfluous? I don't truly understand your question. I will answer it. It seems to me that the last claim element has no meaning if all it is is saying that the mesh element terminates at the forward-most portion of the mesh element. The mesh... So the element before element B says the mesh element includes a forward periphery extending from the first inboard portion to second inboard portion. Is that what I'm saying? The inboard portions are the part of the securement numbers. And so the mesh extends laterally across. And then it's saying that the apparatus terminates at the four peripheries. All that's saying is that there's nothing visible past... There's not something visible. It just... It actually ends. It just... It ends. But it doesn't preclude the possibility that it could... That other portions of the periphery, which the district court recognizes as this, could terminate elsewhere. The only other thing I wanted to talk about, and this is only because counsel raised it, that there's something about... He said something about there being two embodiments in the patent. That's not actually correct. There's only one embodiment of the wig grip apparatus itself. I think counsel is referring to what's shown in Figure 9. But if you look at Figures 8 and Figure 9, and I'm looking at APPX 57 and 58, if you look at Figure 8 and Figure 9, what's shown in Figure 9 with the scalloped edge, that's actually the wig itself, the underlying base structure for the wig itself that's being shown in Figure 9. So unless you have any other questions. Thank you to both counsel.